UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

OBED VEGA,

                              Plaintiff,                    09 Civ. 07637 (RJH) (GWG)

           -against-

FEDERAL EXPRESS CORPORATION,         **MEMORANDUM OPINION AND ORDER**

                              Defendant.

------------------------------------------------------

Richard J. Holwell, District Judge:

*Pro Se* plaintiff Obed Vega ("plaintiff") brings this employment discrimination action against defendant Federal Express Corporation ("FedEx" or "defendant"), alleging race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 – 297; and age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 – 634 and the NYSHRL. Plaintiff, a former employee at FedEx, alleges that FedEx's termination of his employment was unfair and discriminatory because it was motivated by plaintiff's age and circumstances in his personal life at the time of termination. Defendant now moves for summary judgment. For the reasons set forth below, defendant's motion is GRANTED in its entirety and plaintiff's claims are dismissed with prejudice.

1

## I. BACKGROUND

For the purposes of the present motion, the following facts—drawn from Plaintiff's Complaint ("Pl.'s Compl."), Deposition of Plaintiff ("Pl.'s Dep."), documents incorporated in Defendant's Exhibits ("Def.'s Ex.") and Plaintiff's Affirmation in Opposition to Motion ("Pl.'s Opp'n")—are taken as true. Plaintiff, a Hispanic-American male born on March 16, 1968, was around the age of forty when FedEx terminated his employment on March 13, 2008. Pl.'s Dep. at 8:24-9:1; 26:6-8. He had been an employee of FedEx's from 1997 until his termination in 2008. In December 1996, plaintiff signed an employment application with FedEx that included the following provision:

> To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

Pl.'s Dep. at 22:3-25:5; Def.'s Ex. 1 at 11-70. In August 1997, plaintiff's application was accepted and was offered the position of service agent. He remained in this position for approximately six or seven years before accepting a courier position, in which he remained until his termination in March 2008. Pl.'s Dep. at 27:2-9 & 108:7-25; Def.'s Ex. 8; Declaration of Byron Mason ("Mason Decl.") at ¶3.

The chain of events that led to plaintiff's termination is as follows. On February 5, 2008, when plaintiff went to the Department of Motor Vehicles ("DMV") to change the New York address on his driver's license to a New Jersey address, he was informed that he must first go to the traffic court in the City Court of Yonkers, New York to take care of an outstanding traffic ticket. Pl.'s Dep. at 90:8-91:16. Also on February 5, 2008, plaintiff went to the Traffic Court Division in the City Court of Yonkers, which notified

plaintiff that he had missed an earlier trial date for his traffic ticket and, after plaintiff posted a $250 cash bond, set May 6, 2008 as the new trial date. Pl.'s Opp'n at 2; Pl.'s Dep. at 90:8-91:16; Def.'s Ex. 2.

On February 19, 2008, plaintiff signed a document to acknowledge that he had received a "Driver's Requirements Memo" from FedEx Management, which he had certified, read, and understood. Pl.'s Dep. at 94:16 - 95:18; Def.'s Ex. 4 at 8-69. The Driver's Requirements Memo, besides requiring every FedEx driver to maintain a valid driver's license, includes the following requirement in accordance with the Driving Qualification policy 4-48 in FedEx's People manual:

> A driver receiving a traffic violation (other than parking) in any vehicle must notify FedEx Express in writing by the next business day and before driving. … Failure of the employee to provide notification of a traffic violation to his manager as outlined will result in discipline up to and including termination. … All employees who drive as a part of their job whose CDL/drivers license is revoked, lost, suspended, expired, or canceled must notify their manager by the next business day and before operating a Company vehicle. … FedEx Express and the Federal Motor Carrier Safety Administration (FMCSA) require that a driver who loses any privilege to operate a commercial motor vehicle, or who is disqualified from operating a commercial motor vehicle, must advise FedEx Express the next business day after receiving notification and prior to operating a commercial motor vehicle.

Def.'s Ex. 1 at 8-70.

On March 4, 2008, Byron Mason, plaintiff's supervisor at FedEx, requested plaintiff's driver information from the DMV for the purposes of an annual audit and reviewed the report on March 11, 2008. The DMV report revealed that plaintiff's driver's license had been suspended on May 27, 2007 and reinstated on February 5, 2008, during which time period plaintiff had regularly operated a FedEx vehicle. Mason Decl. at ¶7. On March 12, 2008, plaintiff signed a certification stating the following:

> 4. If I receive a traffic violation (other than parking) in any vehicle, I must notify FedEx Express management in writing and the state that issued my driver's license of the citation by the next business day and before operating a FedEx Express Vehicle.
>
> 7. I have not had my driver's license revoked, lost, suspended, expired, or canceled during the past 12 months. …

Pl.'s Dep. at 98:7 – 100:17; Def.'s Ex. 5.  Furthermore, plaintiff received and signed the same certification outlining the responsibilities above every year during his employment as a courier for FedEx.   Pl.'s Dep. at 122:21-123:12.

As a result, Mr. Mason suspended plaintiff on March 12, 2008 for possible violation of Driving Qualification policy 4-48, pending the outcome of an investigation. Pl.'s Dep. at 101:11-22; Def.'s Ex. 6.  Also on March 12, 2008, plaintiff stated in a written statement to Mr. Mason that he was not aware of the suspension of his license, "did not know of [the] situation" until he went to the DMV in February 2008 to change his address, and "corrected" his license at that time.  Def.'s Ex. 7; Pl.'s Dep. at 107:5-108:2; Mason Decl. at ¶9.

Mr. Mason construed plaintiff's written statement on March 12, 2008 as an admission that plaintiff had been aware of his license suspension as of February 2008, which contradicted paragraph seven of his March 12 certification.  Accordingly, Mr. Mason made the decision on March 13, 2008 to terminate plaintiff's employment for violation of policy 4-48, after concluding that plaintiff had knowingly operated a FedEx vehicle on a suspended license and failed to alert management of either the traffic ticket or suspended license.  Pl.'s Dep. at 108:4-25; Def.'s Ex. 8; Mason Decl. at ¶¶ 9-10.

Plaintiff appealed his termination through FedEx's Guaranteed Fair Treatment Procedure ("GFTP").  Samuel L. Nesbit, Jr., a Managing Director at FedEx who was two

levels above Mr. Mason in the chain of command for plaintiff, upheld the termination in a letter dated March 24, 2008 to plaintiff after conducting an investigation. Declaration of Samuel L. Nesbit, Jr. ("Nesbit Decl.") at ¶¶ 2-6 & Exhibit A.

Plaintiff submitted a questionnaire alleging discrimination to the Equal Employment Opportunity Commission ("EEOC") on January 27, 2009, more than 300 days after his termination on March 13, 2008. Pl.'s Dep. at 135:15-136:21; Def.'s Ex. 21. In support of his discrimination charge, plaintiff made references to, among other things, favoritism in management decisions and other FedEx drivers who were able to keep their jobs despite DWIs on their driving records. Pl.'s Opp'n at 2; Pl.'s Dep. at 153:13-22; Def.'s Ex. 21 at 12-20 & 12-21. In a letter dated May 29, 2009, the EEOC notified plaintiff that it was unable to take action on his charge because it was submitted after the 300-day filing limit had passed. In that same letter, the EEOC enclosed a notice of right to sue in federal district court and advised plaintiff that such suit must be brought within ninety days of receipt of the letter. Pl.'s Dep. at 147:3-148:10; Def.'s Ex. 22.

Plaintiff's Complaint for employment discrimination was filed in this Court on September 2, 2009, more than ninety days after EEOC's issuance of the right-to-sue letter on May 29, 2009.[1] Pl.'s Compl.; Pl.'s Dep. at 148:23-149:13. Plaintiff claims the first time he became aware that his license had ever been suspended was when Mr. Mason notified him in March 2008, and denies any knowledge of his suspended license prior to that point. Pl.'s Opp'n at 2; Def.'s Ex. 7. Plaintiff believes that his need to take days off of work to attend court hearings related to his divorce was a factor that adversely contributed to FedEx's decision to terminate his employment. Pl.'s Compl. at 3; Pl.'s

---

[1] The time stamp on Plaintiff's Complaint indicates that it was received on August 18, 2009, but due to the lag in the Pro Se Office's internal filing system at the time, the Complaint was not filed until September 2, 2009.

5

Dep. at 153:13-22.  Furthermore, he was denied unemployment benefits for an entire year following his termination due to FedEx's contention that plaintiff had voluntarily quit his job and was therefore not entitled to unemployment benefits.  Pl.'s Opp'n at 3 & 8.  Plaintiff also claims that FedEx has refused to serve as a job reference since his termination, thereby making his subsequent search for employment even more difficult.  Pl.'s Opp'n at 3.

      Plaintiff is not aware of any statements made by anyone within FedEx management indicating any discriminatory motive based on age or race in the decision to terminate his employment.  Neither is he aware of anything that Mr. Nesbit has said or done that would indicate any discriminatory motive toward either Hispanics or people over the age of 40.  Pl.'s Dep. at 154:3-155:14.

## II. DISCUSSION

      Defendant's motion for summary judgment raises, *inter alia*, two affirmative defenses: (1) that plaintiff's federal claims are barred by his failure to exhaust administrative remedies, namely his failures to file a charge with the EEOC within 300 days of the alleged discrimination and to file a complaint in federal district court within 90 days of receiving the Notice of Right to Sue from the EEOC; and (2) that plaintiff's state claims are barred by the applicable statutes of limitation, including the six-month contractual limitations clause contained in plaintiff's employment application.  The Court concludes that both defenses bar plaintiff's claims.  Even if plaintiff's claims were timely, he has failed to make any showing of discriminatory intent.

### A. The Legal Standard for Granting Summary Judgments

Motions for summary judgments are granted only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To determine whether there is a genuine dispute as to any material fact, the court should view the facts in the light most favorable to the nonmoving party and resolve all factual ambiguities in his favor. *See Havey v. Homebound Mortg., Inc.,* 547 F.3d 158, 163 (2d Cir.2008). A summary judgment motion cannot be granted as long as a genuine dispute exists where "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nabisco, Inc. v. Warner–Lambert Co.,* 220 F.3d 43, 45 (2d Cir. 2000) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). However, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Second Circuit has repeatedly expressed the need for caution in granting summary judgment to employers in employment discrimination cases where the merits turn on a dispute as to the employer's intent, because evidence of discriminatory intent will only rarely be available. *Holcomb v. Iona College*, 521 F.3d 130, 137 (2008); *see Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). But even in employment discrimination cases, the nonmoving party must

offer more than conclusory allegations of discrimination to defeat a motion for summary judgment.  *Meiri*, 759 F.2d at 998.

### B. Title VII and ADEA Claims are Time-Barred Due to Plaintiff's Failure to Exhaust His Administrative Remedies

To bring claims under either Title VII or the ADEA, plaintiff must first exhaust his administrative remedies in accordance with EEOC regulations.[2]  42 U.S.C. §§ 2000e–5(e) (Title VII); 29 U.S.C. §§ 626(d), 633(b) (ADEA); *Miller v. Kempthorne*, 357 Fed. Appx. 384, 385 (2d Cir. 2009); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001); *Wrenn v. Sec'y, Dep't of Veterans Affairs,* 918 F.2d 1073, 1078 (2d Cir. 1990).  In other words, the exhaustion of administrative remedies is a prerequisite to bringing employment discrimination claims in a federal court.

The exhaustion of administrative remedies in Title VII claims requires two things: "the *timely* filing of a discrimination charge with the EEOC *and* the filing of a complaint in the district court within ninety days of receipt of the right-to-sue letter from the EEOC. *See* 42 U.S.C. §§ 2000e–5(e) and (f)(1); *Am. Fed'n of State, County and Mun. Employees v. New York*, 599 F.Supp. 916, 920 (S.D.N.Y. 1984) (emphasis added).  For employment discrimination claims to be timely, they must be filed with the EEOC within 300 days of the alleged discrimination.  42 U.S.C. § 2000e–5(e)(1); *Floyd v. Lord & Taylor*, 96 F. Appx. 792, 793 (2d Cir. 2004).

---

[2] While an aggrieved employee may proceed directly to federal court on an ADEA claim, he becomes obligated to exhaust his administrative remedies once he decides to commence proceedings with the EEOC. *Miller*, 357 Fed. Appx. 385 at n.1; *see Wrenn v. Sec'y, Dep't of Veterans Affairs,* 918 F.2d 1073, 1078 (2d Cir. 1990).

Unlike Title VII claims, ADEA claims can be filed in federal court without waiting for a right-to-sue letter from the EEOC as long as they have been filed with the EEOC for at least sixty days. However, in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant *must* file in a federal court within 90 days of receipt of the letter to exhaust his administrative remedies. *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 563 (2d Cir. 2006) (emphasis added). Because plaintiff missed the EEOC's 300-day filing deadline, failed to bring his ADEA claims in federal court before receiving a right-to-sue letter from the EEOC, and failed to bring his claims in federal court within 90 days of receiving the right-to-sue notice from the EEOC,[3] this Court must dismiss his Title VII and ADEA claims as time-barred due to a failure to exhaust administrative remedies.

### C. NYSHRL Claims are Time-barred by the Six-Month Contractual Limitations Clause in Plaintiff's Employment Application

Plaintiff's age and race discrimination claims under the NYSHRL are time-barred because by signing FedEx's employment application, he had contractually agreed to sue within six months of any alleged discrimination; and his complaint, filed in September 2009, was well after six months following his termination in March 2008.[4]

---

[3] There is an argument that plaintiff's Complaint, received in this Court's Pro Se Office on August 18, 2009, was filed within ninety days of receiving his right-to-sue letter from the EEOC, which was issued on May 29, 2009. Due to a lag in the Pro Se Office's filing system at the time, which plaintiff is unlikely to be familiar with, the official filing date for plaintiff's Complaint is documented as September 2, 2009. In any event, this issue is moot because the exhaustion of administrative remedies requires not just meeting the ninety-day deadline for filing in federal court, but also, but also meeting the 300-day deadline for filing with the EEOC, which plaintiff failed to do.

[4] Plaintiff's claims under Title VII and the ADEA are not time-barred by the six-month contractual limitations clause because "[i]f the parties to a contract intend for a provision to act as a bar to claims brought under federal law, *they must specifically refer to such federal claims, and clearly express the intent to limit the period in which a party could bring an action based upon federal claims.*" *Van-Go Transport Co., Inc. v. New York City Bd. of Educ.*, 53 F.Supp. 2d 278, 284 (E.D.N.Y. 1999) (holding that a contractor's § 1981 claims were not time-barred by a contractual limitations provision because the provision made no reference to federal statutory rights, much less an express waiver of such rights)

"[I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947); *see Van-Go Transport Co., Inc. v. New York City Bd. of Educ.*, 53 F.Supp. 2d 278, 283-84 (E.D.N.Y. 1999) (stating that an agreement shortening the time period in which to bring an action will be upheld if the shorter time period is clearly set forth, reasonable, and voluntarily agreed upon); *Chase v. Columbia Nat'l Corp.*, 832 F. Supp. 654, 659-60 (S.D.N.Y. 1993) (citing multiple New York state court cases supporting the same doctrine).

Numerous jurisdictions have upheld the enforceability of six-month contractual limitations provisions in employment discrimination cases. *See Soltani v. Western & Southern Life Ins. Co.,* 258 F.3d 1038, 1045 (9th Cir. 2001) (finding a six-month contractual limitations provision to be not unconscionable in a wrongful termination action under California law); *Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188, 1206 (7th Cir.1992) (finding a six-month contractual limitations period to be reasonable and not contrary to public policy in § 1981 employment discrimination claims under Illinois law); *Myers v. Western-Southern Life Ins. Co.,* 849 F.2d 259, 269-72 (6th Cir. 1988) (finding a six-month contractual provision in an employment discrimination case

---

(emphasis added). In other words, the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit contractual waivers of an employee's statutory right to a federal judicial forum for claims of employment discrimination. *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998) (The Supreme Court stating that in the context of the American with Disabilities Act and an union-negotiated waiver of employees' statutory right to a federal judicial forum for employment discrimination claims, the Court will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the waiver is clear and unmistakable).

to be not contrary to public policy under Michigan law); *Pfeifer v. Fed. Express Corp.*, 2011 WL 332672, at *4 (D. Kan. Feb. 2, 2011) (finding FedEx's six-month contractual limitation for bringing an action contained in the plaintiff's employment agreement to be reasonable under Kansas law); *Badgett v. Fed. Express Corp.*, 378 F.Supp. 2d 613 (M.D.N.C. 2005) (finding a six-month limitations clause contained in plaintiff's employment agreement to be substantively reasonable under North Carolina law);.

New York law recognizes the freedom of parties to contractually agree to a limitations period shorter than that prescribed by law within which an action must be brought, as long as the contractual limitations period is not against public policy or obtained through fraud, duress, or other wrongdoing.  *See* N.Y. C.P.L.R. § 201; *H.P.S. Capitol, Inc. v. Mobil Oil Corp.,* 588 N.Y.S.2d 29, 30 (App. Div. 1992) (stating that a contractual limitations provision specifying a shorter but reasonable period within which to commence an action is enforceable and "does not conflict with public policy but, in fact, 'more effectively secures the end sought to be attained by the statute of limitations'") (*quoting John J, Kassner & Co., v. City of New York,* 46 N.Y.2d 544, 551 (Ct. App. 1979)); *Diana Jewelers of Liverpool, Inc. v. A.D.T. Co.,* 562 N.Y.S.2d 305, 306 (App. Div. 1990) ("[A] reasonable contractual shortening of the period of limitations is statutorily authorized *(see,* [N.Y. C.P.L.R. 201]) and, absent a showing of fraud, duress or misrepresentation, will be upheld") (citation omitted).  An agreement to shorten the time period within which an action must be brought will be upheld under New York law as long as it is reasonable and voluntarily agreed to, and the intention to establish a shorter period is clearly set forth.  *Chase v. Columbia Nat'l Corp.*, 832 F.Supp. 654, 659-60 (S.D.N.Y. 1993) (internal citations omitted).  Plaintiff makes no arguments as to why the

six-month contractual limitations provision on the employment application, which he voluntarily signed, is unreasonable or against public policy; and the Court is not aware of any New York jurisprudence advancing such arguments in the context of employment discrimination claims under Title VII or the ADEA. Because plaintiff did not file his Complaint until September 2009, well after six months from FedEx's termination of his employment in March 2008, his race and age discrimination claims under the NYSHRL are time-barred.

### D. Plaintiff Has Failed to Show Intentional Discrimination

The Second Circuit evaluates summary judgment motions in Title VII claims under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Joseph v. Leavitt*, 465 F.3d 87, 90 (2006). ADEA claims are analyzed under the same burden-shifting framework. *See Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001); *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 153-54 (2d Cir. 2000). That framework is outlined as follows:

> At the outset, a plaintiff can avoid dismissal by presenting the "minimal" prima facie case defined by the Supreme Court in *McDonnell Douglas*. This requires no evidence of discrimination. It is satisfied by a showing of membership in a protected class, qualification for the position, an adverse employment action*,* and preference for a person not of the protected class. By making out this "minimal" prima facie case, even without evidence of discrimination, the plaintiff creates a presumption that the employer unlawfully discriminated, and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action.... On the other hand, once the employer articulates a non-discriminatory reason for its actions, the presumption completely drops out of the picture. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [against the plaintiff] remains at all times with the plaintiff. Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment (or to the

>   overturning of a plaintiff's verdict) unless the plaintiff can point to
>   evidence that reasonably supports a finding of prohibited discrimination.

*Joseph*, 465 F.3d at 90 (*quoting James v. New York Racing Ass'n*, 233 F.3d 149, 153-54 (2d Cir. 2000) (internal quotations, alterations, and citations omitted).

In this case, the defendant employer FedEx did proffer a nondiscriminatory reason in terminating plaintiff's employment, namely his violation of company policy by failing to alert management while knowingly driving with a suspended license.  Hence, to survive FedEx's motion for summary judgment, plaintiff has the ultimate burden of providing the Court with evidence of intentional discrimination.  Plaintiff has offered no evidence of discriminatory animus by any FedEx decision maker.  Nor has he shown that any similarly situated non-Hispanic or younger employee received lesser discipline for driving with a suspended license or making a false certification.[5]  *See Shumway v. United Parcel Serv. Inc*., 118 F. 3d 60, 63 (1997) (stating that in a Title VII case, the plaintiff has the burden of establishing disparate treatment, the last of the four elements in a prima facie case of discrimination, by showing that a man similarly situated was treated differently).  And while plaintiff may well believe he was treated unfairly, absent evidence of discrimination a court may not second-guess the business judgment of an employer.  *See Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985) ("Although courts must refrain from intruding into an employer's policy

---

[5] The Second Circuit cautions that while the plaintiff has the burden of showing disparate treatment in run of the mill discrimination cases, "cases occasionally arise where a plaintiff cannot show disparate treatment only because there are no employees similarly situated to the plaintiff. A simple example of such a case is where an employer has only one employee. . . . Bearing in mind the flexible spirit of a plaintiff's *prima facie* requirement, . . . the plaintiff should be able to create an inference of discrimination by some other means [in such cases]." *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 467 (2d Cir. 2001). This issue is moot because plaintiff has failed to create an inference of discrimination through evidence of disparate treatment or any other means.

apparatus or second-guessing a business's decisionmaking process, they must also allow employees to show that the employer's demands were illegitimate or arbitrary.") (internal citations and quotations omitted).

### III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED in its entirety, and this action is dismissed with prejudice. The Clerk of the Court is directed to close this motion **[19]** and close this case.

SO ORDERED.

Dated: New York, New York
       September 29, 2011

                                                Richard J. Holwell
                                                United States District Judge